UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

PHILIP BERRYMAN,

     Plaintiff,

v.

GEORGE STEPHENSON,
KRISTOPHER STEECE,
REGINA JENKINS-GRANT,
FRANK SGAMBATI,
ALAN GREASON,
JENNIFER TORRES,
TERRY PLEWS,
PAUL DAVIS,
JOHN CRAWFORD,
CHRISTOPHER PATRICIO,
JENNIFER ELROD,
NICOLE CALLOWAY,
KIM FARRIS,
YUSSAF SHAFAU,
WILLIAM BRIDGES,
RENATA PATTON,
LAURA S. HEINRITZ,
EBONY NENROD,
RICKEY JOE COLEMAN,
MONA GOLSON,
CARMEN MCINTYRE-LEON, and
NORBERT FRONZACK,

     Defendants.

Case No. 21-10925
Honorable Laurie J. Michelson

---

**ORDER GRANTING IN PART MOTION TO DISMISS [37]**

---

Philip Berryman is a prisoner in the custody of the Michigan Department of

Corrections. He is paraplegic and asserts that he must manually evacuate his feces

in his cell. For obvious reasons, Berryman would prefer privacy while doing so. And for over 20 years, the MDOC provided Berryman a single-person cell.

Things changed in February 2017. A few months earlier, Berryman and fellow inmate Derrick Palmer filed a lawsuit against George Stephenson, Kristopher Steece, Jennifer Elrod, and others. *Palmer v. Elrod*, No. 16-13665 (E.D. Mich. filed Oct. 13, 2016). Each of these individuals worked at the Macomb Correctional Facility (MRF) where Berryman had long resided. Berryman believes that in retaliation for filing the suit with Palmer, Steece and others removed his long-standing accommodation of a single-person cell. (*See* PageID.10–11.)[1]

Since February 2017, Berryman has filed several lawsuits claiming that the MDOC's failure to place him in a single-person cell was unlawful retaliation in violation of the First Amendment and cruel and unusual punishment in violation of the Eighth Amendment.

In April 2021, Berryman filed this pro se lawsuit. (ECF No. 1.) Like his prior suits, he complains of the MDOC's decision to not place him in a single-person cell. But this suit includes a host of other claims. His allegations span hundreds of paragraphs and 38 pages, and Berryman names 22 people at two correctional facilities as defendants. It appears that 20 of the 22 defendants—all except Rickey Joe Coleman and Kim Farris—work directly for the MDOC. (Coleman and Farris are, apparently, Corizon Correctional Healthcare employees.)

---

[1] Unless specified otherwise, all record citations are to ECF No. 1.

The 20 MDOC defendants ask this Court to dismiss the overwhelming majority of Berryman's claims under Federal Rule of Civil Procedure 12(b)(6). (ECF No. 37.) In particular, the MDOC Defendants request dismissal of all of Berryman's claims except for his "First Amendment retaliation claims for transfer and threats of retaliatory transfer against . . . Stephenson, Steece, Greason, Torres, and Jenkins-Grant." (ECF No. 37, PageID.647.) Berryman has not filed a response to the MDOC Defendants' motion, and the time to do so has long passed. As will be explained, the MDOC Defendants' motion will be GRANTED IN PART.

## I.

Berryman arrived at Macomb Correctional Facility (MRF) in 2014. (PageID.8.) According to Berryman, MRF has been designated as the correctional facility with a Jewish Prisoner Program. (PageID.22.) Berryman practices Orthodox Judaism. (ECF No. 20, PageID.131; *see also* PageID.22.)

In 2016, Berryman and another prisoner, Derrick Palmer, filed a lawsuit against Stephenson (the Deputy Warden at MRF), Steece, Jenkins-Grant, Elrod (a nurse), and others. *Palmer v. Elrod*, No. 16-13665 (E.D. Mich. filed Oct. 13, 2016). In February 2017, Steece allegedly informed Berryman, "You do not have an approved accommodation[] for a single cell. I just had Healthcare reevaluate you as well. You will not be granted a single man cell at this time." (PageID.10.)

In March 2017, Berryman (along with another prisoner) filed a lawsuit against Steece and others claiming that he had been deprived a single-person cell because of the *Palmer* suit in violation of the First Amendment and, in any event, that the

deprivation violated the Eighth Amendment. *See Ritchie v. Hass (Berryman I)*, No. 17-10762 (E.D. Mich. filed March 7, 2017). The case was assigned to the undersigned. This Court granted Steece and the others summary judgment on Berryman's claims because he had not "grieve[d] the claims he presents in this case through the last step of MDOC's grievance process." *See Berryman v. Haas*, No. 17-CV-10762, 2017 WL 3263980, at *1, 3 (E.D. Mich. July 31, 2017). The Sixth Circuit affirmed this determination. *Berryman v. Haas*, No. 18-1426, slip op. at 3–4 (6th Cir. Feb. 13, 2019).

In March 2018, Berryman (and another prisoner) filed a second lawsuit asserting that he was being unconstitutionally denied a single-person cell. *Berryman v. Hass (Berryman II)*, No. 18-10833 (E.D. Mich. filed Mar. 9, 2018). Among others, this lawsuit named Stephenson, Jenkins-Grant, and Sgambati—three defendants in this case. *See id. Berryman II* was reassigned to the undersigned as a companion to his 2017 case.

In June 2018, Berryman was transferred from MRF to JCF, an MDOC facility in Jackson, Michigan. (PageID.19.) It appears that shortly thereafter, Berryman was transferred to Earnest C. Brooks Correctional Facility (LRF), another MDOC facility in Jackson, Michigan. *See* (PageID.24); *Berryman v. Haas*, No. 2:18-CV-10833, 2018 WL 6715826, at *2 (E.D. Mich. Dec. 21, 2018).

In December 2018, this Court denied Berryman's motion for preliminary relief filed in *Berryman II*. The Court noted that Berryman had not shown that staff at his new facility, LRF, had denied him a single-person cell. *Berryman*, 2018 WL 6715826, at *2. And while Berryman stressed that MRF had Jewish programming that LRF

did not have, "the Court [could not] conclude that there [was] any significant infringement on Berryman's religious liberty." *Id.* at *3. "Berryman ha[d] not explained why food that is indirectly shipped to his current correctional facility, LRF, [did] not allow him to practice his faith. And Berryman ha[d] not alleged that LRF ha[d] too few 'natural' or 'Born' Jewish persons to allow for a minyan or otherwise allow him to practice his faith." *Id.*

Ultimately, *Berryman II* was dismissed because Berryman had not exhausted the claims in that suit. *See generally Berryman v. Haas*, No. 2:18-CV-10833, 2019 WL 1434303 (E.D. Mich. Mar. 31, 2019). That determination was affirmed. *See generally Berryman v. Haas*, No. 19-1484, 2020 WL 6325553 (6th Cir. May 11, 2020).

In 2018, while at LRF, Berryman filed a third lawsuit claiming that staff at LRF had wrongly deprived him of a single-person cell. *See Berryman v. Washington*, No. 1:18-CV-1317, 2019 WL 4051643 (W.D. Mich. Aug. 28, 2019). That case was filed in the Western District of Michigan and thus, unlike the prior two cases, was not assigned to the undersigned. That case involved a First Amendment claim of retaliatory transfer to LRF and an Eighth Amendment claim for a single-person cell (among other claims). The court in the Western District found that the complaint did not state a viable claim. *See id.* at *7. The case was thus dismissed. *Id.*

At some point—the pleadings do not say precisely when—Berryman was transferred back to MRF. (PageID.24.)

In April 2021, Berryman filed this lawsuit. Berryman has sued 22 people who worked at MRF or LRF while he resided at those facilities. Recently, this case was

reassigned to the undersigned as a companion to *Berryman I* or *Berryman II* (or both). (ECF No. 38.) Because Berryman's claims in this latest case span multiple years and have different factual bases, the Court will present the factual allegations when addressing the claims.

The 20 defendants employed by the MDOC seek dismissal under Federal Rule of Civil Procedure 12(b)(6) and the Prison Litigation Reform Act. Berryman has not filed a response to the MDOC Defendants' motion, and the time to do so has long passed.

## II.

In deciding a motion to dismiss under Rule 12(b)(6), the Court "construes the complaint in the light most favorable" to Berryman and determines whether his "complaint 'contain[s] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Heinrich v. Waiting Angels Adoption Servs., Inc.*, 668 F.3d 393, 403 (6th Cir. 2012) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). What is plausible is "a context-specific task" requiring this Court "to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

Additionally, under the Prison Litigation Reform Act, the Court is required to screen complaints filed by prisoners and dismiss claims that "fail[] to state a claim upon which relief may be granted." 28 U.S.C. § 1915A. Allegations "state a claim" under § 1915A only if they meet the plausibility standard set out in *Iqbal. See Hill v. Lappin*, 630 F.3d 468, 471 (6th Cir. 2010).

One final note. Irrespective of a litigant's *pro se* status, it is not the Court's job to make arguments for him. And so in evaluating the unopposed motion to dismiss, the Court focuses on whether Defendants have made good faith arguments that Berryman's complaint fails to state plausible claims.

### III.

The Court first addresses Berryman's claims against people who worked at MRF and then addresses his claims against people who worked at LRF.

### A. MRF Defendants

### 1. Kristopher Steece

Berryman makes a number of allegations against Steece. He alleges that after he sued Steece in *Palmer*, Steece took away his single-cell accommodation. (PageID.10.) Berryman also alleges that Steece transferred him to LRF in retaliation for filing the *Palmer* suit. (PageID.20.) Berryman further says that when he returned to MRF, Steece modified a "PRA" document so that he would not be given the law library job that he had prior to the transfer. (PageID.20.) Berryman adds that Steece changed the PRA document because he is Jewish, and Steece is an anti-Semite. (PageID.19–20.) Berryman finally claims that Steece ordered a corrections officer (Shafau) to deny Berryman zippered pants that were necessary for Berryman to use the bathroom due to his paraplegia. (PageID.28–29.)

Regarding Berryman's single-person cell, Defendants point out that no law clearly establishes that depriving a person who needs to manually disimpact his bowels a single-person cell violates the Eighth Amendment. (ECF No. 37,

PageID.644.) Given that Berryman has not responded to the MDOC Defendants' motion, the Court agrees that Steece is entitled to qualified immunity on this claim.

What about Berryman's other allegations against Steece? The MDOC Defendants say that if their motion is granted, Berryman's claim that Steece transferred him in violation of the First Amendment would remain. (ECF No. 37, PageID.647.) And the MDOC Defendants have not addressed Berryman's claim that Steece deprived him of his law library job; so that First Amendment retaliation claim remains too. As for Berryman's claim that Steece took away his zippered pants, the Court will dismiss that claim insofar as it is based on the Eighth Amendment. Although, as explained below, the like claim against Shafau will survive, Berryman has pled that Shafau knew that Berryman would fall from the toilet without zippered pants. Berryman does not make a like allegation about Steece's knowledge. To the extent that Berryman alleges that Steece deprived him of zippered pants in retaliation for the *Palmer* suit or other protected conduct, that First Amendment claim will survive.

### 2. George Stephenson

Berryman makes a number of allegations against Stephenson. In 2016, "Stephenson and Elrod initiated the first step of the retaliation" when he "strongly persuaded" Elrod to write a misconduct ticket. (PageID.18.) Berryman received 21 days in segregation. Berryman also says that Stephenson wanted to transfer him from MRF, despite knowing that prisoners in the Jewish program were not to be transferred from MRF. (PageID.19.) Further, when Berryman attempted to get his

law library job back after being returned to MRF from LRF, Stephenson repeatedly stated, "I'll look into it." (*Id.*) When Berryman pointed out that Stephenson always said that he would look into it, Stephenson responded, "You're getting smarter. Warden Hass can't stop this one for you." (PageID.19.) It appears that Berryman also faults Stephenson for not having a single-person cell. (PageID.11–12.) Lastly, as with Steece, Berryman also claims that Stephenson ordered a corrections officer to deny Berryman zippered pants that were necessary for Berryman to use the bathroom due to his paraplegia. (PageID.28–29.)

Defendants argue that in *Berryman I* and *Berryman II*, this Court found that Berryman had not exhausted his claims for a single-person cell; so, they say, issue preclusion prevents Berryman from relitigating that issue now. Stephenson was a defendant in *Berryman I* and *Berryman II*. And as noted, Berryman has not filed a response to the MDOC Defendants' motion. Accordingly, to the extent Berryman is claiming that Stephenson deprived him of a single-person cell in 2017, the Court finds that Berryman cannot relitigate his failure to exhaust that claim.

As for Berryman's claim that Stephenson transferred him from MRF despite knowing that he should not be removed from the Jewish prisoner program, the Court echoes what it said in a prior opinion: Berryman has not adequately pled that he could not fully practice his faith at LRF. *Berryman*, 2018 WL 6715826, at *3.

As for Berryman's other claims against Stephenson, the analysis largely tracks the analysis of the claims against Steece. In particular, the MDOC Defendants say that if their motion is granted, Berryman's claim that Stephenson transferred him in

9

violation of the First Amendment would remain. (ECF No. 37, PageID.647.) The MDOC Defendants have not addressed Berryman's claim that Stephenson deprived him of his law library job; so that First Amendment retaliation claim remains too. As for Berryman's claim that Stephenson took away his zippered pants, the Court will dismiss that claim insofar as it is based on the Eighth Amendment. To the extent that Berryman alleges that Stephenson deprived him of zippered pants in retaliation for the *Palmer* suit or other protected conduct, that First Amendment claim will survive. Finally, Berryman's claim that Stephenson retaliated by "strongly persuad[ing]" Elrod to write a false misconduct ticket will also survive.

### 3. Regina Jenkins-Grant

It appears that Berryman's only claim against Jenkins-Grant is that she tried to cover up the retaliatory transfer. (PageID.22.) Berryman says that he grieved the transfer, and that Jenkins-Grant and Greason responded to it (despite being personally involved in the alleged misconduct). (PageID.22.) Jenkins-Grant or Greason allegedly wrote the following in a grievance response: "You were transferred in accordance to policy to create bed space for an incoming in-reach prisoner with a wheelchair accommodation and to accommodate your ongoing medical appointments in the Jackson area." (PageID.22.) Berryman says that Jenkins-Grant and Greason "kn[ew] full well" that he did not have medical appointments in the Jackson area. (PageID.22.)

The MDOC Defendants say that if their motion were granted, Berryman's retaliatory transfer claim against Jenkins-Grant would survive. (ECF No. 37,

PageID.647.) Accordingly, Berryman's claim against Jenkins-Grant will not be dismissed.

### 4. Alan Greason

Berryman's allegations against Greason are almost the same as against Jenkins-Grant. (PageID.22.) And the MDOC Defendants say that if their motion were granted, Berryman's retaliatory transfer claim against Greason would survive. (ECF No. 37, PageID.647.) Accordingly, Berryman's claim against Greason will not be dismissed.

### 5. Jennifer Torres

Berryman says that Torres was a transfer coordinator at MRF and that she helped cover up the retaliatory transfer. (PageID.22.) Berryman says that Torres knew that he did not have medical appointments in Jackson. (PageID.23.) Berryman also says that Torres knew that he had a "hold" and could not be transferred from MRF because he was a participant in the Jewish program at MRF. (PageID.22.)

The MDOC Defendants say that if their motion were granted, Berryman's retaliatory transfer claim against Torres would survive. (ECF No. 37, PageID.647.) Accordingly, this claim against Torres will not be dismissed.

As far as Torres infringing on Berryman's religious liberty, Berryman has not adequately pled that he could not fully practice his faith at LRF. *Berryman*, 2018 WL 6715826, at *3.

### 6. Laura Heinritz

Berryman's allegations against Heinritz are almost the same as the allegations against Torres: that Heinritz was a transfer coordinator at MRF and knew that

Berryman should not be transferred from MRF because he was a participant in the Jewish prisoner program at MRF. (PageID.23.) Berryman also implies that Heinritz should have known that the reason for the transfer (medical appointments in the Jackson area) was false. (PageID.23–24.)

As with Torres, the Court finds that Berryman has not adequately pled that he could not fully practice his faith at LRF. *Berryman*, 2018 WL 6715826, at *3. Further, Berryman has not adequately alleged that Heinritz had a retaliatory motive, so any First Amendment claim against her for retaliatory transfer will be dismissed.

### 7. Frank Sgambati

Berryman says that Sgambati is the "go to guy" for transfer and that he "surely" talked with other Defendants, including Stephenson and Steece. (PageID.21.) Berryman also says that Sgambati was a liaison between rabbis and the Jewish program at MRF and so Sgambati knew that he was not to be transferred from MRF. (PageID.21.)

Regarding Berryman's retaliation claim, the MDOC Defendants point out that Berryman has not alleged that Sgambati had a retaliatory motive. (ECF No. 37, PageID.624.) The Court agrees. And Berryman's assertion that Sgambati talked with Stephenson and Steece does not show that Sgambati understood that the reason he was being asked to complete a transfer was because Berryman had engaged in protected conduct. At most, Berryman has alleged that Sgambati was the means by which other defendants retaliated.

12

As far as Sgambati infringing on Berryman's religious liberty, Berryman has not adequately pled that he could not fully practice his faith at LRF. *Berryman*, 2018 WL 6715826, at *3.

### 8. Jennifer Elrod

Berryman alleges that, in 2016, Stephenson and Elrod engaged in the "first step of retaliation" by writing up a false misconduct ticket. (PageID.1, 18.) Apparently, the ticket was for Berryman's catheter hitting Elrod on the foot. (*See id.*) As a result of the misconduct ticket, Berryman spent 21 days in segregation. (*Id.*)

Even setting aside the obvious statute of limitations problems, these allegations do not state a viable First Amendment claim against Elrod. Although Elrod was a defendant in the *Palmer* suit, Berryman otherwise provides no reason why Elrod would have any motive to retaliate. In fact, Berryman says that "*Stephenson* strongly persuaded Defendant Elrod to write a false ticket on Plaintiff." (PageID.18 (emphasis added).) If Elrod herself did not have retaliatory motive, and did not recognize that Stephenson was directing her to file the misconduct ticket because of retaliatory motive, then Elrod was at most a conduit for Stephenson's retaliation. And, as discussed, the retaliation claim against Stephenson survives. *Cf. Roberts v. Principi*, 283 F. App'x 325, 333 (6th Cir. 2008) ("In effect, the [retaliator] is the decisionmaker, and the titular 'decisionmaker' is a mere conduit for the [retaliator's] discriminatory animus." (internal quotation marks omitted)).

### 9. William Bridges

Berryman says that Bridges failed to get statements from witnesses who would help him defend the misconduct ticket filed by Elrod. (PageID.1, 29.)

Again, disregarding any statute of limitations issues for conduct that allegedly occurred in 2016, Berryman has not alleged facts to infer that Bridges had motive to retaliate, let alone for conduct protected by the First Amendment.

To the extent that Berryman brings a claim under the Due Process Clause, the MDOC Defendants argue, "The Sixth Circuit routinely has held that misconduct convictions that do not result in the loss of good time are not atypical and significant deprivations and therefore, do not implicate due process." (ECF No. 37, PageID.627.) That appears to be the law, *Sandin v. Conner*, 515 U.S. 472, 486 (1995); *Guile v. Ball*, 521 F. App'x 542, 544 (6th Cir. 2013), and absent any response from Berryman, the Court accepts the MDOC Defendants' position. Thus, the claims against Bridges are dismissed.

### 10. Norbert Froznack

Berryman makes several allegations against Froznack. He asserts that Froznack cancelled his law library callout on August 14, 2020, when he had three active cases. (PageID.34.) Berryman also says that he tried to explain to Froznack that under *Allen v. City & County of Honolulu*, he could not be forced to choose between yard time and law library time. (PageID.34.) Froznack allegedly told Berryman that the MRF warden said that Berryman needed to pick one or the other. (PageID.34.) On August 12, 2020, Berryman and Froznack got into an argument

14

about yard versus library time. (PageID.34.) Apparently, Froznack was not wearing his mask during the argument and thus exposed Berryman, who has serious health issues, to the risk of contracting COVID-19. (PageID.35–36.) Further, Froznack allegedly wrote Berryman a major misconduct ticket because Berryman was not wearing his mask. (PageID.35.) The ticket was heard and dismissed; video purportedly showed it was Froznack who was not wearing his mask. (PageID.35.)

Berryman's claims against Froznack will be dismissed. It is true that *Allen v. City & County of Honolulu* explained that prisoners have constitutional rights to some yard time (for health and wellbeing) and to some law library time, and that a prisoner should not be forced to sacrifice one constitutional right for the other. 39 F.3d 936, 939 (9th Cir. 1994). But the plaintiff in *Allen* had limited time outside his cell that had to be split between recreation, library, and the infirmary and those limits were potentially long term. *See id.* Here, Berryman does not allege that his library callout time was repeatedly scheduled during yard time such that there was any significant infringement on either right. Indeed, he has not pled that his missed library callout actually affected his ability to prosecute his legal cases.

As for the fact that Froznack did not wear his mask during an argument, Berryman has not pled that Froznack had reason to think that he had COVID-19 or was aware of Berryman's health conditions. Thus, Froznack did not knowingly place Berryman at a substantial risk of serious harm. *See Murray v. Dep't of Corr.*, — F. 4th —, No. 21-3398, 2022 WL 946294, at *4 (6th Cir. Mar. 30, 2022) (providing that to prove an Eighth Amendment claim, the plaintiff must show that the "defendant

15

subjectively perceived facts from which to infer substantial risk [of serious harm] to [him], that he did in fact draw the inference, and that he then disregarded that risk by failing to take reasonable measures to abate it").

### 11. Renata Patton

Berryman says that when he returned to MRF from LRF, he tried to get his law library job back but that Patton refused it. (PageID.24.) Patton also allegedly refused to provide Berryman back pay for the time he was not able to work in the library due to the allegedly retaliatory transfer to LRF. (PageID.24.) Patton allegedly stated, "I told you when you were in four unit that one day you would be sorry for the way you talked to me, well this is that day." (PageID.24.)

Berryman's claim against Patton will be dismissed. Berryman does not say what he said to Patton in "four unit," i.e., Berryman does not plead that his comments were speech protected by the First Amendment. Further, to the extent that the loss of Berryman's law library job at MRF was due to the transfer to LRF, Berryman has not adequately pled that Patton was involved in that transfer.

### 12. Mona Golson

Berryman alleges that an MRF staff person opened his mail from the Veteran's Administration; according to Berryman, Golson not only condoned that unlawful act but also sought to cover it up when she responded to a grievance about it. (PageID.33.) Apparently, Golson's grievance response was also late under the MDOC grievance policy, but she refused to do anything about the untimely response when Berryman raised the issue. (PageID.33.)

16

Berryman's claim against Golson will be dismissed. Even if an MRF staff person unlawfully opened, took, or destroyed Berryman's mail, that loss of property would not amount to a violation of the Due Process Clause absent some showing that there is no post-deprivation remedy under state law—a showing which Berryman has not made. *See Valladolid v. Michigan Dep't of Corr.*, No. 15-1930, 2017 WL 3528221, at *3 (6th Cir. Feb. 14, 2017); *Dorch v. Munoz*, No. 12-1501, 2012 WL 13228667, at *2 (6th Cir. Nov. 14, 2012). It follows that Golson's alleged cover up of that property damage also does not amount to a violation of the Due Process Clause.

### 13. Ebony Nenrod

Berryman's complaint hardly mentions Nenrod. All he says is that she was somehow involved in responding to the grievance he filed about his VA mail. (PageID.33.) Thus, for the same reasons that Berryman's claim against Golson fails, it fails against Nenrod. (The caption to the MDOC Defendants' motion includes "Ebony Nenrod" as well as "A/G Nedrod"; the Court believes this to be a mistake and that the two names correspond to the same person.)

### 14. Rickey Joe Coleman

Berryman says that Coleman committed a number of wrongs. For one, Coleman, "acting as the AMO for the MDOC and Corizon Health," allegedly "retaliated" against Berryman by removing special accommodation notices. (PageID.29.) Berryman says that Coleman, along with McIntyre and Farris, removed a special accommodation notice for zippered pants, which Berryman needed to use the toilet. (PageID.30.) Coleman, along with McIntyre and Farris, also allegedly

17

removed a special accommodation notice for a long-sleeve shirt and wide-brim hat. (PageID.30.) According to Berryman, the deprivation of those clothes "caused the on set of basil-cell carcinoma." (PageID.30.) Berryman also says that when he complained of the removal of the special accommodation notices, Coleman, along with Farris and McIntyre, removed yet another special accommodation notice: one for shoes. (PageID.31.) According to Berryman, he is allergic to standard-issue shoes (PageID.2), and the removal of the special accommodation shoes resulted in blisters (PageID.31). Finally, Berryman says that Coleman and McIntyre, with the aid of Farris, ordered his pain pills be crushed; Berryman says he has a Barrett's esophagus and that the powder and sharp edges of the crushed pills caused him heartburn and other pain. (PageID.30.)

As the Michigan Attorney General does not represent Coleman (apparently, he is a Corizon employee), the MDOC Defendants' motion does not address Berryman's claims against Coleman. Even so, the Court will review the claims under § 1915A.

At several points, Berryman uses the phrase "retaliat[ion]" when pleading Coleman's wrongdoing. (*See* PageID.29, 30.) But Berryman has not alleged that Coleman had any motive to retaliate. *See Maben v. Thelen*, 887 F.3d 252, 262 (6th Cir. 2018) (providing that a First Amendment retaliation claim requires a causal connection between protected conduct and adverse action).

To the extent that Berryman intended to bring Eighth Amendment claims against Coleman, the Court will largely permit those to survive for now. True, Berryman has not pled that Coleman knew that removing the special accommodation

18

notices for zippered pants, long-sleeve shirt, wide-brim hat, and shoes would place him at a substantial risk of serious harm. But presumably those items were prescribed to Berryman because of his medical needs (e.g., the zippered pants due to his paraplegia and the sun clothes due to risk of skin cancer). And, presumably, in removing the special accommodation notices, Coleman would have considered why they were provided in the first place, i.e., he would have considered the original medical need. So it is plausible that Coleman inferred that by removing the special accommodation notices, he was taking away items that were medically necessary, i.e., it is *plausible* that he inferred that without the items, there was a substantial risk of serious harm to Berryman.

In seeking dismissal of very similar claims against McIntyre, the MDOC Defendants argue that Berryman has not pled that McIntyre was directly involved in the removal of the special accommodation notices and that Berryman has "failed to present any expert medical evidence that Defendant McIntyre provided grossly inadequate care." (PageID.639.)

These arguments do not persuade the Court to dismiss all the Eighth Amendment claims against Coleman. Berryman does plead direct involvement: "McIntyre and Coleman with Defendant Farris retaliate[d] against Plaintiff Berryman by removing his m[o]st needed Special Accommodation Notice." (PageID.31.) And whether blisters and basil-cell carcinoma are serious medical needs is better addressed on an evidentiary record rather than on the pleadings. (PageID.31.) Finally, the MDOC Defendants argue that a prisoner's mere

19

disagreement with his doctor's treatment plan does not state an Eighth Amendment claim. (ECF No. 37, PageID.639.) This is true. But, as explained, the special accommodation notices were presumably granted by a medical professional for a medical need, so Berryman does not rely solely on his own disagreement with Coleman's removal of the notices.

That leaves Berryman's claim that he was ordered to have his pills crushed and that the crushed pills hurt when swallowed. Even with a Barrett's esophagus (a condition where esophageal cells mutate into intestinal cells), and without more explanation of the harm, the Court does not believe that swallowing crushed pills causes serious harm under the Eighth Amendment.

### 15. Carmen McIntyre-Leon

Berryman's claims against McIntyre-Leon are almost the same as those against Coleman. (*See* PageID.30–31.) Accordingly, the above analysis as to Coleman applies equally to McIntyre-Leon.

### 16. Yussaf Shafau

Berryman alleges that Shafau refused to provide him with zippered pants. (PageID.28.) Without the zippered pants, Berryman alleged he fell several times while trying to use the toilet. (*Id.*) When Berryman told Shafau that he could not pull down non-zippered pants without falling off the toilet, Shafau allegedly told Berryman to put some paper on the floor, laughed, and walked away. (PageID.29.) Shafau also allegedly stated, "you filed to[o] many grievances" and mentioned his answer to one of Berryman's grievances. (PageID.29.) Berryman also says Shafau

20

denied him his shoes even when he presented documentation that they were medically necessary. (PageID.29.)

The MDOC Defendants argue that the claims against Shafau should be dismissed for a few reasons. They say Berryman has not pled that Shafau was involved in the decision to remove any special accommodation notices. (ECF No. 37, PageID.638.) They also say that Berryman has not pled facts that his special accommodation notices were for serious medical needs. (*Id.*) And they argue that Berryman's mere disagreement with a medical professional's decision to remove special accommodation notices does not establish deliberate indifference.

For now, the Court will permit the claims against Shafau to survive. True, Berryman pleads that Stephenson and Steece ordered Shafau to not provide the zippered pants and that Shafau would lose his job if he did not comply with the orders. But Berryman also says that he told Shafau that without the zippered pants, he would fall from the toilet to the ground. Instead of reporting that difficulty to anyone with authority to provide zippered pants, Shafau allegedly laughed and told Berryman to put toilet paper on the ground. So it is plausible that Shafau was deliberately indifferent to Berryman's serious medical need. Regarding the zippered pants, Shafau also allegedly stated that Berryman filed too many grievances and referenced a grievance against him. So it is plausible that Shafau denied the zippered pants because of Berryman's grievance. As for the shoes, Berryman pleads that he showed Shafau documentation that they were "[m]edically required shoes." (PageID.29.) And as stated above, Berryman has pled that without the shoes, his feet

blistered. (PageID.31.) So it is also plausible that Shafau was deliberately indifferent to Berryman's serious medical need for special shoes.

### 17. Kim Farris

Berryman says that in 2016, his nose was infected, and, apparently, Farris prescribed him an antibiotic. (PageID.31.) Berryman says that his medical records "s[h]owed he was allergic" to the antibiotic and that taking it "would cause [his] death." (PageID.31.) In fact, Berryman says that when he pointed out to Farris that she almost killed him by prescribing the antibiotic, she allegedly stated, "Oh my God[.] I guess I made a mistake on your antibiotic Mr. Berryman" and allegedly "smiled in a joking manner." (PageID.32.) Berryman says that Farris then started a "crusade" of retaliation. (PageID.32.) This included her requests to Coleman and McIntyre to remove special accommodation notices. (PageID.32.) These special accommodation notices included one for extra clothes, which Berryman needed due to his inability to control his bowels. (PageID.32.) When Berryman confronted Farris about her retaliation, she allegedly stated, "I've just begun Mr. Berryman, you can keep helping prisoners file grievances against me and you'll keep losing [special accommodation] items." (PageID.32.)

As Farris is apparently employed by Corizon, the current motion does not seek her dismissal. Even so, the Court will review the claims against Farris under § 1915A.

Berryman's claim about Farris prescribing the wrong antibiotic in 2016 will be dismissed. On its face, this claim is barred by the three-year status of limitations.

*See, e.g., Harnden v. St. Clair Cty.*, Nos. 18-1402/1404, 2018 U.S. App. LEXIS 30236, *7 (6th Cir. Oct. 25, 2018).

As for Berryman's claims about Farris requesting that Berryman's special accommodation notices be removed, those claims will survive for largely the same reasons as the similar Eighth Amendment claims against Coleman and McIntyre survive. Additionally, because Berryman alleges that Farris removed the special accommodation notices because of grievances or his participation in the Warden's Forum, his First Amendment claim will survive. Again, the current motion, insofar as it is filed by the Michigan Attorney General, does not seek to dismiss the claims against Farris.

### B. LRF Defendants

As noted, in or around June 2018, Berryman was transferred to the Earnest C. Brooks Correctional Facility (LRF) in Jackson, Michigan. Berryman brings claims against five MDOC staff at LRF.

### 1. John Crawford

According to Berryman, after his belongings were shipped from MRF to LRF, Crawford opened his footlockers. (PageID.25.) In one locker was a long-handled toothbrush. (*Id.*) Berryman implies that he had the toothbrush before then-current MDOC regulations, and thus, it was grandfathered in. (*Id.*) Even so, Crawford issued Berryman a misconduct ticket. (*Id.*) Patricio presided over the ticket and found Berryman guilty. (*Id.*)

Berryman's claim against Crawford will be dismissed. As noted above, for a false misconduct ticket to be a concern of the Due Process Clause, the ticket must have resulted in an "atypical, significant" deprivation of liberty. *Sandin v. Conner*, 515 U.S. 472, 486 (1995); *Guile v. Ball*, 521 F. App'x 542, 544 (6th Cir. 2013). Berryman has not pled what punishment he received, but even a short stint in segregation would not have violated the Constitution.

To the extent that the toothbrush was confiscated and thus Crawford took Berryman's personal property, that too would not implicate the Due Process Clause. The MDOC Defendants point out that to prevail on such a claim, Berryman needs to show that under state law, there is not an adequate remedy. (ECF No. 37, PageID.625.) And, according to the MDOC Defendants, "[t]he Sixth Circuit specifically has held that Michigan provides adequate post-deprivation remedies for deprivation of property." (*Id.*) There is law to that effect, *see Valladolid v. Michigan Dep't of Corr.*, No. 15-1930, 2017 WL 3528221, at *3 (6th Cir. Feb. 14, 2017); *Dorch v. Munoz*, No. 12-1501, 2012 WL 13228667, at *2 (6th Cir. Nov. 14, 2012), and Berryman has not responded to the MDOC Defendants' motion and thus offers nothing to the contrary.

### 2. Terry Plews

Berryman says that when he arrived at LRF his guitar was damaged or altered. (PageID.25.) Plews allegedly blamed Berryman for this and thus wrote Berryman a misconduct ticket. (PageID.26.) Berryman further says that the ticket was in retaliation for exercising his First Amendment right to access the courts, "and

in fact . . . Plews stated this fact to [me] . . . during a conversation . . . in his office."
(*Id.*)

To the extent that Berryman pursues claims against Plews under the Due Process Clause, they will be dismissed for the same reasons that Berryman's claims against Crawford will be dismissed.

To the extent that Berryman pursues claims against Plews under the First Amendment, they will also be dismissed. Although Berryman claims that Plews retaliated because he exercised his right to access the courts, the allegation is vague and does not specify the protected conduct or how Plews knew about it. Berryman does imply that someone at MRF told Plews that Berryman was "coming this way" and that Plews told Berryman that "the bus ride is one of the oldest tools the MDOC has." (PageID.26.) But Berryman does not say that the people who gave Plews a heads up were Steece, Stephenson, or anyone else with an allegedly retaliatory motive.

### 3. Nicole Calloway

Berryman's claims against Calloway ("Gallaway" in the compliant) will be dismissed. Berryman merely alleges that Calloway apologized for the damage to his guitar, asserted that Michigan State Industries as opposed to LRF was responsible for transferring property, and then refused to give Berryman the names of LRF staff that handled his property. (PageID.28.) Those allegations do not state a claim for relief.

### 4. Paul Davis

Apparently, not long after his arrival at LRF, Berryman was called into Davis' office. (PageID.26.) Davis allegedly told Berryman that he "must have really pissed of Stephenson at [MRF]" to be receiving all this treatment, including "diesel therapy" (a transfer via bus). (PageID.26.) When Berryman showed Davis paperwork relating to a single-cell accommodation, Davis laughed and said that was the reason for your bus ride. (PageID.26.) Davis refused Berryman a single-cell accommodation at LRF. (*Id.*)

Berryman also complains of a staff memo that Davis wrote. In October 2018, Berryman's seven footlockers with legal materials were placed in a storage closet at LRF. (PageID.26.) The lockers were allegedly stacked five high. (PageID.27.) According to Berryman, Davis and Patricio wrote a memo saying that Berryman was not to receive help with accessing his lockers: "We [staff] are not required to unlock or move any of the footlockers for him. . . . [Berryman's wheelchair] pusher will not be allowed to assist [him] while he is in the back storage room, nor will he be allowed to open and/or move any of the footlockers." (PageID.27.) Berryman, who is paraplegic, asserts that the memo is an example of the lengths that MDOC staff would go to retaliate against him. (*Id.*)

Berryman's claims based on Davis' denial of a single-person cell will be dismissed. Although Berryman does plead that Davis spoke with Stephenson who was a defendant in *Palmer*, Berryman does not say that Stephenson told Davis to retaliate for the *Palmer* suit or other protected conduct. So Berryman has not pled

that Davis appreciated that his decision to not provide a single-person cell had anything to do with conduct protected by the First Amendment. To the extent that Berryman claims that Davis' denial of a single-person cell violated the Eighth Amendment, as explained above, Berryman has not cited law clearly establishing that it is cruel and unusual punishment to force a prisoner to disimpact his bowels in front of another prisoner.

As for Davis' memo, if what Berryman alleges is true, the memo was callous. But Berryman has not alleged that having his lockers stacked five high without assistance in fact inhibited his ability to pursue any legal claim. *See Kirschke v. MacLaren*, No. 18-1606, 2018 WL 6177162, at *2 (6th Cir. Nov. 8, 2018) ("To establish a violation of the right of access to the courts, a prisoner must show that prison officials inflicted an 'actual injury.'").

### 5. Christopher Patricio

Berryman's allegations against Patricio are almost the same as those against Davis. So the same analysis applies to those claims.

### IV.

For the reasons given, the MDOC Defendants' motion (ECF No. 37) is GRANTED IN PART and DENIED IN PART. Having considered the MDOC Defendants' motion and completed a screening under § 1915A, the Court orders as follows:

1. William Bridges is DISMISSED.
2. Nicole Calloway is DISMISSED.
3. Rickey Joe Coleman:

   a. Berryman's claim that Coleman violated the Eighth Amendment by removing special accommodation notices survives;

   b. to the extent that Berryman attempted to bring any other claims against Coleman, they are DISMISSED.

4. John Crawford is DISMISSED.

5. Paul Davis is DISMISSED.

6. Jennifer Elrod is DISMISSED.

7. Kim Farris:

   a. Berryman's claim that Farris violated the Eighth Amendment by removing special accommodation notices survives;

   b. Berryman's claim that Farris violated the First Amendment by retaliatorily removing special accommodation notices survives;

   c. to the extent that Berryman attempted to bring any other claims against Farris, they are DISMISSED.

8. Norbert Froznack is DISMISSED.

9. Mona Golson is DISMISSED.

10. Laura Heinritz is DISMISSED.

11. Regina Jenkins-Grant:

   a. Berryman's claim that Jenkins-Grant violated the First Amendment by participating in a retaliatory transfer survives;

   b. to the extent that Berryman attempted to bring any other claims against Jenkins-Grant, they are DISMISSED.

12. Alan Greason:

   a. Berryman's claim that Greason violated the First Amendment by participating in a retaliatory transfer survives;

   b. to the extent that Berryman attempted to bring any other claims against Greason, they are DISMISSED.

13. Carmen McIntyre-Leon:

   a. Berryman's claim that McIntyre-Leon violated the Eighth Amendment by removing special accommodation notices survives;

   b. to the extent that Berryman attempted to bring any other claims against McIntyre-Leon, they are DISMISSED.

14. Ebony Nenrod is DISMISSED.

15. Christopher Patricio is DISMISSED.

16. Renata Patton is DISMISSED.

17. Terry Plews is DISMISSED.

18. Frank Sgambati is DISMISSED.

19. Yussaf Shafau:

   a. Berryman's claim that Shafau violated the Eighth Amendment by denying him zippered pants survives;

   b. Berryman's claim that Shafau violated the Eighth Amendment by denying him special accommodation shoes survives;

   c. Berryman's claim that Shafau violated the First Amendment by retaliatorily denying him zippered pants survives;

   d. Berryman's claim that Shafau violated the First Amendment by retaliatorily denying him special accommodation shoes survives;

   e. to the extent that Berryman attempted to bring any other claims against Shafau, they are DISMISSED.

20. Christopher Steece:

   a. Berryman's claim that Steece violated the First Amendment by participating in a retaliatory transfer survives;

   b. Berryman's claim that Steece violated the First Amendment by retaliatorily depriving him of a law library job survives;

   c. Berryman's claim that Steece violated the First Amendment by retaliatorily depriving him of zippered pants survives;

   d. to the extent that Berryman attempted to bring any other claims against Steece, they are DISMISSED.

21. George Stephenson:

   a. Berryman's claim that Stephenson violated the First Amendment by "strongly persuad[ing]" Elrod to file a false misconduct ticket survives;

   b. Berryman's claim that Stephenson violated the First Amendment by participating in a retaliatory transfer survives;

   c. Berryman's claim that Stephenson violated the First Amendment by retaliatorily depriving him of a law library job survives;

   d. Berryman's claim that Stephenson violated the First Amendment by retaliatorily depriving him of zippered pants survives;

   e. to the extent that Berryman attempted to bring any other claims against Stephenson, they are DISMISSED.

22. Jennifer Torres:

   a. Berryman's claim that Torres violated the First Amendment by participating in a retaliatory transfer survives;

29

      b.  to the extent that Berryman attempted to bring any other claims against Torres, they are DISMISSED.

SO ORDERED.

    Dated: April 7, 2022

                       s/Laurie J. Michelson
                       LAURIE J. MICHELSON
                       UNITED STATES DISTRICT JUDGE