UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

PHILIP BERRYMAN,

      Plaintiff,

v.

GEORGE STEPHENSON,
KRISTOPHER STEECE,
REGINA JENKINS-GRANT,
FRANK SGAMBATI,
ALAN GREASON,
JENNIFER TORRES,
TERRY PLEWS,
PAUL DAVIS,
JOHN CRAWFORD,
CHRISTOPHER PATRICIO,
JENNIFER ELROD,
NICOLE CALLOWAY,
KIM FARRIS,
YUSSAF SHAFAU,
WILLIAM BRIDGES,
RENATA PATTON,
LAURA S. HEINRITZ,
EBONY NENROD,
RICKEY COLEMAN,
MONA GOLSON,
CARMEN MCINTYRE-LEON, and
NORBERT FRONCZAK,

      Defendants.

Case No. 21-10925
District Judge Laurie J. Michelson
Magistrate Judge Patricia T. Morris

---

## OPINION AND ORDER GRANTING IN PART
## PLAINTIFF'S MOTION FOR RECONSIDERATION [48]

Phillip Berryman is a prisoner in the custody of the Michigan Department of Corrections and has filed this lawsuit against employees of the MDOC and of Corizon Health, alleging a host of wrongdoings.

This Court previously granted in part the MDOC Defendants' motion to dismiss. Unfortunately, due to mail delays or related issues, Berryman's response brief to the motion to dismiss was not docketed until after this Court ruled on the motion. Berryman now seeks reconsideration of the Court's decision, arguing, among several other things, that it was not proper for the Court to have ruled on the motion without considering his response. For the reasons provided below, the Court will grant in part Berryman's motion.

Berryman indicates that the docket in this case is confusing and faults this Court for previously stating that "Berryman has not filed a response to the MDOC Defendants' motion [to dismiss], and the time to do so has long passed." *Berryman v. Stephenson*, No. 21-10925, 2022 WL 1053286, at *1 (E.D. Mich. Apr. 7, 2022).

The docket is a bit confusing—some documents have an earlier filing date but a later docket number than other documents. (*Compare* ECF No. 44 (filing date April 5, 2022), *with* ECF No. 39 (filing date April 7, 2022).) But an explanation of filing dates assigned to prisoner filings and the procedural history in this case will clarify matters.

When a prisoner files a brief (or motion), there are several dates associated with the brief: the date the prisoner hands it off to prison authorities for mailing, the date the post office receives the brief (as evidenced by the postmark), and the date the Clerk's office dockets the brief (which, in the normal course, is the earliest that a judge learns of the brief). Although the Clerk's office often records the postmark date as the filing date (*see e.g.*, ECF No. 44), a prisoner is usually entitled to an earlier

2

filing date: one that corresponds to the date he hands it off to prison authorities for mailing, *Cretacci v. Call*, 988 F.3d 860, 865 (6th Cir. 2021).

In this case, the defendants who work for the Michigan Department of Corrections (as opposed to the two who work for Corizon Health) filed a motion to dismiss on January 28, 2022. (ECF No. 37.)

Three days later, on February 1, Berryman signed a motion asking for 60 days to respond to the motion to dismiss, explaining that he had limited library access due to a COVID-19 outbreak at his correctional facility. (ECF No. 50, PageID.894.) Inexplicably, the motion that Berryman signed on February 1 was postmarked over *three months* later, on May 9; it was docketed by the Clerk's office still later, on May 19.

In the meantime, Berryman must have thought he had been granted the 60 days (although no order has ever said so) and was apparently busy preparing his response to the MDOC Defendants' motion. Berryman signed his response brief and handed it off for mailing on March 21, 2022. (ECF No. 51, PageID.907.) The postmark date of the brief is April 5, so the Clerk's office assigned the brief a filing date of April 5. (*See* ECF No. 44.) That filing date makes it appear as if the response was filed before this Court issued its April 7 opinion on the MDOC Defendants' motion to dismiss. But, in fact, the Clerk's office docketed the brief on April 14 (*see* ECF No. 44)—a week *after* the Court issued its opinion.

To sum up, prior to April 7 when it issued its opinion, the Court believed that Berryman's response had been due in February because it had no knowledge of

Berryman's motion for 60 days to respond to the MDOC Defendants' motion to dismiss. Nor did the Court have any knowledge of Berryman's response brief. That is why this Court stated that "Berryman has not filed a response to the MDOC Defendants' motion, and the time to do so has long passed." *Berryman*, 2022 WL 1053286, at *1.

So what to do now?

On the one hand, arguably there is too much water under the bridge to consider Berryman's response brief at this point. Normally, a party has only three weeks to respond to a motion to dismiss. By the time the Court issued its opinion, almost 10 weeks had passed, and the Court had not received Berryman's response to the motion. And because his request for a 60-day extension had not been docketed, this Court had no reason to think that a response brief would be coming. Berryman's complaint is lengthy (38 pages), names over 20 defendants, and is not the most clearly written; so it took the Court quite a while to resolve Defendants' motion. And now, effectively, Berryman wants the Court to review his response brief, reread his complaint in light of the response brief, and then do much of the work over again. Moreover, Berryman never received a grant of his request for a 60-day response period—by completing his response brief on March 21, he presumed the extension had been granted. Consider, too, that the MDOC Defendants never had a chance to submit a reply brief before the Court ruled. All of this suggests that the best course is to let things stand as they are.

On the other hand, it appears that Berryman signed his request for 60 days to respond on February 1, 2022. (ECF No. 50, PageID.894.) And the Court is aware that around that time, there was a very large spike in COVID-19 cases, which, likely led to restricted library access, as Berryman claims. (*Id.* at PageID.895.) Thus, if this Court had timely received Berryman's request for 60 days to respond, it likely would have granted that request—or, at least, granted some extension of time. (Notably though, this case was assigned to a different judge when Berryman made the 60-day request.) And the current record does not show that it was Berryman's fault that his motion for a 60-day extension was not docketed for months after he signed it. And Berryman's response brief was signed and handed off for mailing on March 21, 2022 (ECF No. 51, PageID.907), which is within the 60-day period he had requested. Finally, Berryman has also filed a motion for reconsideration of this Court's opinion on the MDOC Defendants' motion to dismiss—that motion is timely and makes some of the same points as in the response brief.

In this situation, the Court has elected to consider Berryman's response brief— but only to see if the brief, along with Berryman's motion for reconsideration, plainly demonstrates that claims were dismissed that should not have been. Having considered Berryman's response and motion for reconsideration, the Court finds that beyond those claims the Court previously permitted to survive, *see Berryman*, 2022 WL 1053286, at *12, Berryman may pursue claims based on (1) the deprivation of a single-person cell, (2) the loss of his prisoner-observation-aide job, and (3) that

William Bridges retaliated by not collecting witness statements that would have permitted Berryman to defend a major-misconduct ticket.

*Single Person Cell*. In Berryman's response to Defendants' motion to dismiss, he cites paragraphs 30 through 32 of his complaint to argue that he pled that Defendants George Stephenson and Kristopher Steece had agreed to provide him a single-person cell but then had "a change of heart . . . after Plaintiff engaged in protective conduct." (*See* ECF No. 44, PageID.751; *see also* ECF No. 48, PageID.879.)

Without the benefit of Berryman's response or motion for reconsideration, it was reasonable for the Court to interpret paragraphs 30 through 32 of the complaint as supplying background facts (as opposed to pleading a claim for relief). It appears that facts alleged in those paragraphs occurred in 2017 or earlier; in fact, the exact same allegations appear in a complaint filed by Berryman in 2017. *Compare* Complaint at 5, *Berryman v. Hass*, No. 17-10762 (E.D. Mich. filed Mar. 7, 2017), *with* (ECF No. 1, PageID.9). Further, Berryman's current complaint is more focused on a retaliatory transfer in June 2018 and subsequent events. In fact, in his response to Defendants' motion, Berryman implies that preclusion does not apply because the events that gave rise to his current complaint occurred in 2018 and 2019. (*See* ECF No. 44, PageID.752.) Berryman's response brief also describes attempting to resolve a single-person-cell issue with Stephenson in January and February 2018 whereas paragraphs 30 through 32 of the complaint relate to events in 2017 or earlier. (ECF No. 44, PageID.762; *see also* ECF No. 1, PageID.19.)

That said, if the Court had the benefit of Berryman's response brief before it ruled, it might have more broadly interpreted Berryman's claim that he was deprived of a single-person cell because he engaged in conduct protected by the First Amendment. As such, the Court will treat this claim as part of this case—but only if Berryman more clearly pleads the claim in the manner specified at the end of this opinion.

The Court recognizes that in their motion to dismiss, the MDOC Defendants raised issue preclusion based on Berryman's two or three prior lawsuits asserting his entitlement to a single-person cell. (ECF No. 37, PageID.619.) In fact, the Court found that "to the extent Berryman is claiming that Stephenson deprived him of a single-person cell in 2017, . . . Berryman cannot relitigate his failure to exhaust that claim." *Berryman*, 2022 WL 1053286, at *4. But dismissal of a claim for failure to exhaust is a dismissal without prejudice. *Russ v. TDOC*, No. 19-5656, 2020 WL 3317753, at *3 (6th Cir. Jan. 15, 2020) ("Under the PLRA, the appropriate way to dispose of unexhausted claims is to dismiss them without prejudice."). Thus, Berryman is only precluded from relitigating whether he exhausted the single-person-cell claims he raised in the 2017 lawsuit before he filed that lawsuit, *see Berryman v. Haas*, No. 17-CV-10762, 2017 WL 3263980, at *1 (E.D. Mich. July 31, 2017), and whether he exhausted the single-person-cell claims he raised in the 2018 lawsuit before he filed that lawsuit, *Berryman v. Haas*, No. 2:18-CV-10833, 2019 WL 1434303, at *1 (E.D. Mich. Mar. 31, 2019). The underlying claims themselves are not precluded—only whether Berryman exhausted them before those two suits were filed. While the Court

7

recognizes that the MDOC Defendants may have grounds to dismiss the claim, the Court believes that the most prudent approach is for Berryman to first clearly articulate his First Amendment retaliation claim based on the loss of a single-person cell, and then the Court will permit Defendants, if warranted, to seek dismissal of that clearly articulated claim. Again, the Court will provide direction at the end of this opinion.

In his complaint, Berryman also arguably asserts that depriving him of a single-person cell subjects him to cruel and unusual punishment prohibited by the Eighth Amendment. (*See* ECF No. 1, PageID.9–10.) In addressing the MDOC Defendants' motion to dismiss, this Court reasoned, "Defendants point out that no law clearly establishes that depriving a person who needs to manually disimpact his bowels a single-person cell violates the Eighth Amendment. . . . Given that Berryman has not responded to the MDOC Defendants' motion, the Court agrees that [Defendant Kristopher] Steece is entitled to qualified immunity on this claim." *Berryman*, 2022 WL 1053286, at *3. The Court reasoned similarly as to Defendant Paul Davis. *Id.* at *11.

In his response to Defendants' motion, Berryman cites a pair of cases that he says put Defendants on notice that it is cruel and unusual punishment to deprive a prisoner who must manually extract feces a single-person cell. (ECF No. 44, PageID.770–771.) Although these two cases might not provide the type of clear notice that strips an officer of qualified immunity, the cases are not entirely off point either. *See Stoudemire v. Michigan Dep't of Corr.*, 614 F. App'x 798, 803 (6th Cir. 2015)

(indicating an Eighth Amendment violation where cell was not designed for paraplegic prisoner and thus, prisoner was forced to urinate in a bowl on one occasion and defecate on herself on another). Moreover, the MDOC Defendants have asserted that there is no clearly established law at the motion-to-dismiss stage, but "[d]ismissing for qualified immunity on this ground is sometimes difficult because the clearly established inquiry may turn on case-specific details that must be fleshed out in discovery." *Crawford v. Tilley*, 15 F.4th 752 (6th Cir. 2021). Accordingly, and because Berryman will have an opportunity to replead his First Amendment claim based on the deprivation of a single-person cell, the Court will allow Berryman to more clearly articulate his Eighth Amendment single-person-cell claim, and then permit Defendants to seek dismissal of that better-stated claim.

*Prisoner-Observation-Aide Job*. Berryman's response brief also justifies allowing him to pursue a First Amendment claim based on losing two jobs as opposed to one.

In addressing the MDOC Defendants' motion, the Court did not dismiss Berryman's claims that Stephenson and Steece deprived him of a law-library job in retaliation for conduct protected by the First Amendment. *Berryman*, 2022 WL 1053286, at *12–13. As this Court understood Berryman's complaint, these claims were based on Berryman losing his job at the Macomb Correctional Facility following a transfer (i.e., a claim based on conduct in 2018 or 2019). *See id.* at *3. The Court also believed that "Steece modified a 'PRA' document so that [Berryman] would not be given the law library job that he had prior to the transfer." *Id.*

9

Having now reviewed Berryman's response brief and looked again at his complaint, Berryman also complained of losing a second job, a prisoner-observation-aide job. (ECF No. 1, PageID.18; *see also* ECF No. 44, PageID.764.) As noted in the prior opinion, the MDOC Defendants did not address Berryman's claim that he lost his law-library job. *Berryman*, 2022 WL 1053286, at *3. Reviewing their motion again, they also did not address his claim that he lost his observation-aide job. Accordingly, the Court will allow Berryman to pursue this additional First Amendment claim.

*Bridges' Alleged Retaliation.* In his response brief, Berryman points out that he pled that Bridges retaliated by not collecting witness statements for a major-misconduct ticket. (ECF No. 44, PageID.767.) Berryman's complaint does state that when he asked Bridges why witness statements were not gathered, Bridges allegedly stated, "I got statements from staff just not the ones you wanted and my job means more to me that getting you answers. You piss people off Mr. Berryman with your grievances and helping other prisoners beat their ticket of which *I'm fed up with myself* and the deputies feel the same way and as they are my bosses I do what they say." (ECF No. 1, PageID.29 (emphasis added).) The complaint further alleges that Bridges stated, "I know it was you who typed up the lawsuit against me and the other staff for prisoner Ayotte, claiming I signed a Dead Person's name, you peace of shit." (*Id.*) This Court previously believed that Berryman had not adequately pled that Bridges had a motive to retaliate, but upon considering Berryman's response brief and again reviewing the complaint, the First Amendment claim is plausibly pled.

10

Moreover, the MDOC Defendants did not move to dismiss this claim, instead only asserting that Bridges was not liable for the deprivation of a single person cell or a retaliatory transfer. (*See* ECF No. 37, PageID.596, 597, 622, 646.) Accordingly, the Court will allow Berryman to pursue this First Amendment claim.

Apart from those three sets of claims (one set of claims based on the deprivation of a single-person cell, one set of claims based on the loss of the observation-aide job, and the third based on Bridge's conduct), Berryman's response brief and motion for reconsideration raise two other issues that should be expressly addressed.

*One.* In ruling on the MDOC Defendants' motion, this Court dismissed some defendants because Berryman had not pled that they were aware that their actions were in retaliation for conduct protected by the First Amendment. In this Court's view, Berryman had only pled that these defendants had performed actions on behalf of another defendant who wanted to retaliate for protected conduct. For instance, the Court explained, "Although Elrod was a defendant in the *Palmer* suit, Berryman otherwise provides no reason why Elrod would have any motive to retaliate. In fact, Berryman says that '*Stephenson* strongly persuaded Defendant Elrod to write a false ticket on Plaintiff.' If Elrod herself did not have retaliatory motive, and did not recognize that Stephenson was directing her to file the misconduct ticket because of retaliatory motive, then Elrod was at most a conduit for Stephenson's retaliation." *Berryman*, 2022 WL 1053286, at *5. The Court thus dismissed the First Amendment retaliation claim against Elrod. The Court used similar reasoning as to other defendants.

11

In his response brief, Berryman relies on *Thaddeus-X v. Blatter*, 175 F.3d 378 (6th Cir. 1999). (ECF No. 44, PageID.758.) There, three defendants claimed that they were merely executing their superior's orders when they placed the plaintiff into a filthy and noisy cell block. *Id.* at 393. In addressing a First Amendment retaliation claim, the Sixth Circuit found that "[r]eliance on a superior's orders does not in itself dissipate all liability." *Id.*

The Court does not believe that *Thaddeus-X* demonstrates that this Court's prior ruling was error. In *Thaddeus-X*, there was evidence that each of the three defendants who claimed they were merely following orders in fact knew of the plaintiff's protected conduct and knew that he was being placed in the undesirable cell block because of the protected conduct. *See* 175 F.3d at 384 ("Blatter told X that he was being moved 'on base' . . . for filing too many lawsuits and grievances. . . . Graham and Bildner are alleged to have told X . . . that he was put on base . . . to punish him for filing lawsuits."). In contrast, this Court held that when an officer performs an adverse action but has no reason to know that the action is motivated by protected conduct, and herself is not motivated by protected conduct, the officer is not liable. So the Court will not reconsider this part of its decision.

*Two.* In his response brief and in his motion for reconsideration, Berryman also takes issue with the fact that an attorney for the Corizon Defendants raised affirmative defenses for the MDOC Defendants. (ECF No. 48, PageID.879.) This issue is also the subject of Berryman's objections to a report and recommendation, so the Court will address this issue in a separate order.

* * *

In view of Berryman's response brief and motion for reconsideration, neither of which the Court had when it originally considered the MDOC Defendants' motion to dismiss, the Court will permit Berryman to pursue a small number of claims in addition to those listed in this Court's prior order. In all, Berryman may pursue the following claims in this case (additional claims resulting from this order are shown in italics):

1. Claims that Rickey Coleman violated the Eighth Amendment by removing special accommodation notices;
2. Claims that Kim Farris
   a. violated the Eighth Amendment by removing special accommodation notices, and
   b. violated the First Amendment by retaliatorily removing special accommodation notices;
3. Claims that Regina Jenkins-Grant violated the First Amendment by participating in a retaliatory transfer;
4. Claims that Alan Greason violated the First Amendment by participating in a retaliatory transfer;
5. Claims that Carmen McIntyre-Leon violated the Eighth Amendment by removing special accommodation notices;
6. Claims that Yussaf Shafau
   a. violated the Eighth Amendment by denying zippered pants,
   b. violated the Eighth Amendment by denying special accommodation shoes,
   c. violated the First Amendment by retaliatorily depriving zippered pants, and
   d. violated the First Amendment by retaliatorily denying special accommodation shoes;
7. Claims that Christopher Steece
   a. violated the First Amendment by participating in a retaliatory transfer,
   b. violated the First Amendment by retaliatorily depriving a law-library job,
   c. *violated the First Amendment by retaliatorily depriving a prisoner-observation-aide job, and*
   d. violated the First Amendment by retaliatorily depriving zippered pants;
8. Claims that George Stephenson

13

      a. violated the First Amendment by "strongly persuad[ing]" Elrod to file a false misconduct ticket,

      b. violated the First Amendment by participating in a retaliatory transfer,

      c. violated the First Amendment by retaliatorily depriving a law-library job,

      *d. violated the First Amendment by retaliatorily depriving a prisoner-observation-aide job, and*

      e. violated the First Amendment by retaliatorily depriving zippered pants;

9. Claims that Jennifer Torres

      a. violated the First Amendment by participating in a retaliatory transfer;

10. *Claims that William Bridges*

      *a. violated the First Amendment by not gathering witness statements for a major-misconduct ticket;*

11. *Claims that certain defendants*

      *a. violated the First Amendment by retaliatory depriving a single-person cell;*

      *b. violated the Eighth Amendment by depriving a single-person cell.*

Although the Court will allow Berryman to pursue these claims, direction for pursing these claims is warranted. The manner in which Berryman has so far prosecuted this case has not been an efficient use of judicial resources. As noted, Berryman's complaint is 38 pages, names 22 defendants, and raises dozens of legal claims; the allegations span six or seven years and different correctional facilities. That type of complaint makes it very challenging to identify and then address each and every claim. Moreover, Berryman's latest motion for preliminary injunctive relief (he has already filed two this case) involves events that happened after this suit was filed, i.e., it raises still more claims. And since Berryman filed his complaint, he has filed over 10 motions; in just the past month, he has filed four. This case cannot proceed this way.

To allow the parties and the Court to focus on the remaining claims in this case, the Court orders as follows. Berryman is to file an amended complaint. The

amended complaint may contain *only* the claims listed above. The amended complaint should be structured so that there is one section for each remaining defendant. Each such section should be largely self-contained: to the extent possible, all relevant factual allegations about that defendant's alleged wrongful conduct should be contained in the section. Because Berryman's allegations span a six-or-seven-year period and involve many defendants, Berryman is to include the date (or approximate date) for every alleged act by a defendant. Of particular importance are the dates of alleged protected conduct and the dates of alleged adverse actions. Berryman is to specify the particular defendants who he believes are responsible for depriving him of a single-person cell. Berryman's current complaint describes conduct by 22 defendants and is 38 pages; it also includes many repetitive paragraphs. (*See e.g.*, ECF No. 1, PageID.14–17.) Thus, the amended complaint, which will describe conduct of around 9 defendants, is limited to 20 pages. The amended complaint is due on or before September 15, 2022.

Once the amended complaint is filed, Defendants may file a motion to dismiss. But Defendants may only seek dismissal of Berryman's First Amendment and Eighth Amendment claims based on the deprivation of a single-person cell or claims that, based on the complaint, are clearly barred by the applicable statute of limitations. Defendants already had an opportunity to dismiss Berryman's other claims. If Defendants believe that other claims are without merit, they may seek summary judgment on those claims in accordance with the Magistrate Judge's schedule. If

Defendants file a second motion to dismiss, Berryman may respond and Defendants may reply per the District's Local Rules.

To the extent consistent with the foregoing, Berryman's motion for reconsideration (ECF No. 48) is GRANTED IN PART and DENIED IN PART.

Berryman's motions inquiring into the status of or seeking to compel a ruling on his motion for reconsideration (ECF Nos. 58, 59) are GRANTED only insofar as the Court has now addressed his motion for reconsideration. The Court notes, however, that it has many cases, and must manage its caseload in the interest of all litigants, not just Berryman. As it does with all cases before it, the Court will address each of Berryman's motions in due time. So moving forward, the Court expects this case to follow the normal course of litigation, which typically does not involve motions about the status of other motions.

Finally, the Court notes that to the extent that Berryman continues to type his briefs and motions, he must comply with this District's Local Rules, which require 14-point font (as opposed to 12), double spacing, and one-inch margins.

SO ORDERED.

Dated: July 22, 2022

s/Laurie J. Michelson
LAURIE J. MICHELSON
UNITED STATES DISTRICT JUDGE