UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

PHILIP BERRYMAN,

    Plaintiff,

v.

GEORGE STEPHENSON,
KRISTOPHER STEECE,
REGINA JENKINS-GRANT,
FRANK SGAMBATI,
ALAN GREASON,
JENNIFER TORRES,
TERRY PLEWS,
PAUL DAVIS,
JOHN CRAWFORD,
CHRISTOPHER PATRICIO,
JENNIFER ELROD,
NICOLE CALLOWAY,
KIM FARRIS,
YUSSAF SHAFAU,
WILLIAM BRIDGES,
RENATA PATTON,
LAURA S. HEINRITZ,
EBONY NENROD,
RICKEY COLEMAN,
MONA GOLSON,
CARMEN MCINTYRE-LEON, and
NORBERT FRONCZAK,

    Defendants.

Case No. 21-10925
District Judge Laurie J. Michelson
Magistrate Judge Patricia T. Morris

**OPINION AND ORDER ACCEPTING MAGISTRATE JUDGE'S RECOMMENDATION [60], DENYING MOTION FOR PRELIMINARY INJUNCTION [54], DENYING MOTION FOR EVIDENTIARY HEARING [71], AND OVERRULING OBJECTIONS [67, 68, 72]**

Philip Berryman has sued 20 people who work for the Michigan Department of Corrections and two people who work for Corizon Health alleging that they committed a plethora of unlawful acts during his incarceration. As discussed in more detail in a separate order, this litigation has followed an inefficient course to resolution. As just one example, Berryman filed a second (arguably third) motion for a temporary restraining order and preliminary injunction, and there are no less than *eleven* filings (motions, objections, etc.) in connection with just this one motion. As this Court said in a prior order, "This case cannot proceed this way." (ECF No. 65, PageID.1101.) The Court will address the inefficiencies to date and chart a more efficient course elsewhere. Here, the Court addresses Berryman's objections to Magistrate Judge Patricia T. Morris' recommendation to deny his motion for preliminary relief and two related issues.

In Berryman's latest motion for preliminary relief, he alleges that one of the Corizon Defendants, Kim Farris, and several of the MDOC Defendants (Kristopher Steece, Alan Greason, Jennifer Torres, and George Stephenson) transferred him from the Macomb Correctional Facility (MRF) to the Thumb Correctional Facility (TCF) to retaliate against him for engaging in conduct protected by the First Amendment. (ECF No. 15, PageID.915.) Additionally, Berryman asserts that at TCF, he cannot fully practice his religion. (ECF No. 15, PageID.916.) He explains that at TCF, there are not enough Jewish-born prisoners to form a minyan (a quorum required for Jewish communal worship) and Jewish food is unavailable. Berryman seeks an order enjoining Farris and

2

others from threatening retaliatory transfer in the future and directing that he be transferred back to MRF. (ECF No. 54, PageID.920.) Alternatively, Berryman requests that this Court order that he be provided Jewish services and kosher meals at TCF. (ECF No. 68, PageID.1119.)

Magistrate Judge Morris recommends denying Berryman's motion. She found that Berryman did not have a strong likelihood of success on the merits in part because "the Declaration of Brianna LaGrow, R.N. . . . notes that the request to transfer Plaintiff to the 'medically frail unit' (the Franklin Unit) at TCF was made by the MDOC's Bureau of Health Care Services." (ECF No. 60, PageID.1037.) This suggested that Farris and others did not transfer Berryman to retaliate. (*Id.*) The Magistrate Judge further found that Berryman had not made the required showing of irreparable harm. One reason supporting this conclusion was that Brian Becker, the chaplain at TCF, had submitted an affidavit stating that there were weekly Jewish services at TCF, that Berryman had not requested a kosher diet since arriving at TCF, that if Berryman requested a kosher diet (and if Berryman qualified for one), he would make a recommendation for a kosher diet, and that if there were greater interest or a specific request, he would reach out to the community about providing grape juice and challah. (ECF No. 60, PageID.1047.)

Berryman makes nine or so objections to the Magistrate Judge's report and recommendation. (ECF No. 68.) The Court has reviewed them and finds that it is not necessary to address each one separately. Having conducted a de novo review

3

of Berryman's motion, this Court concludes that preliminary relief is not appropriate for the reasons that follow.

Although articulated differently, courts agree that for a preliminary injunction to issue, there must be a nexus between what is alleged in the complaint and what is alleged in the preliminary-injunction motion. *See Pacific Radiation Oncology, LLC v. Queen's Med. Ctr.*, 810 F.3d 631, 636 (9th Cir. 2015); *Alabama v. U.S. Army Corps of Engineers*, 424 F.3d 1117, 1134–35 (11th Cir. 2005); *Devose v. Herrington*, 42 F.3d 470, 471 (8th Cir. 1994). The Sixth (and Eighth) Circuit require "a relationship between the injury claimed in the party's motion [for preliminary relief] and the conduct asserted in the complaint." *Colvin v. Caruso*, 605 F.3d 282, 299–300 (6th Cir. 2010) (quoting *Devose*, 42 F.3d at 471). This rule lines up with the reason for issuing a preliminary injunction: the movant has shown she is likely to win at trial but that waiting until then to provide relief will cause her irreparable harm, and so the Court provides relief at the start of the case. *See id.* Thus, if a motion for preliminary injunction attempts to prove wrongs not alleged in the complaint, the movant is not showing that she is likely to win at trial—the tried claims would be those in the complaint. Or think of it this way: if the wrongdoing in the complaint were enjoined, but that wrongdoing is not the cause of the irreparable injury asserted in the motion for preliminary relief, then the injunction would not prevent irreparable harm. *See See Colvin*, 605 F.3d at 299–300 (providing that the "purpose of interim equitable relief" is to

4

protect the movant from being "harmed through the *illegality alleged in the complaint*" (emphasis added)).

Here, there is not a sufficient tie between the claims and relief sought in Berryman's complaint and the claims and relief sought in Berryman's motion for preliminary relief.

Consider the complaint first. The complaint mostly concerns events between 2017 and 2020 and primarily alleges a retaliatory transfer from MRF that occurred in June 2018. As for Farris specifically, this Court understood Berryman's claims to center on her denial of special accommodations because Berryman had engaged in conduct protected by the First Amendment. *See Berryman v. Stephenson*, No. 21-10925, 2022 WL 1053286, at *10 (E.D. Mich. Apr. 7, 2022). Berryman's complaint only contained conclusory statements about Farris' involvement in the June 2018 transfer. Finally, although Berryman titled his complaint, "Verified Civil Rights Complaint for Damages, Declaratory and Injunctive Relief," he only requested monetary damages, and, more specifically, did not seek to enjoin Farris from retaliating against him. (*See* ECF No. 1, PageID.14–18, 40 (seeking $50,000 in compensatory and $50,000 in punitive from each defendant).)

Now take Berryman's motion for preliminary relief. He alleges that in December 2021—over six months after the complaint was filed—he refused medical treatment from Farris because she was a named defendant in this suit. (ECF No. 54, PageID.923.) According to Berryman, the next day, Farris allegedly

threatened to transfer him to another prison. (ECF No. 54, PageID.923–924.) Then in May 2022— a year after this lawsuit was filed—Berryman says he was transferred from MRF to TCF. (ECF No. 54, PageID.922.) And, although not entirely clear, the main irreparable harm that Berryman identifies in his motion is that he is unable to practice his religion at TCF. (*See* ECF No. 54, PageID.915–916.)

As the two prior paragraphs suggest, there is an insufficient "relationship between the injury claimed in [Berryman's] motion and the conduct asserted in [his] complaint," *Colvin v. Caruso*, 605 F.3d 282, 299–300 (6th Cir. 2010). The irreparable injury claimed in the motion is an inability to practice his religion at TCF. The conduct in the complaint mostly occurred between 2017 and 2020, and certainly before his transfer to TCF in 2022; and as to Farris specifically, the alleged wrongs centered on her removal of special accommodation notices. Finding that Berryman is likely to succeed on those claims would not warrant an injunction requiring TCF to provide means for Berryman to practice his religion. Nor would it warrant an order directing MDOC to transfer Berryman back to MRF (where Berryman says he can practice his religion). True, Berryman's complaint alleged that Farris had a retaliatory motive in removing the special accommodation notices, and his motion asks this Count to enjoin future retaliatory acts. But stopping future retaliatory acts would not cure the current irreparable harm—Berryman has already been transferred to TCF and Farris continues to work at MRF. In short, the alleged wrongs in the complaint are too

6

attenuated from the irreparable harm sought in the motion to warrant an injunction.

And even supposing that conclusion is wrong, the Court would still not grant Berryman a preliminary injunction. In deciding whether preliminary relief should issue, the Court considers the following factors: "(1) whether the movant has a strong likelihood of success on the merits; (2) whether the movant would suffer irreparable injury without the injunction; (3) whether issuance of the injunction would cause substantial harm to others; and (4) whether the public interest would be served by issuance of the injunction." *Balow v. Michigan State Univ.*, 24 F.4th 1051, 1055–56 (6th Cir. 2022).

Regarding the likelihood of success on the merits, the evidence does not clearly show that the transfer to TCF was in retaliation for First Amendment conduct.

On the one hand, Defendants explain that a new unit at TCF was created to address prisoners with medical needs and that Erin Parr-Mirza, not Farris, completed a form for Berryman to be considered for the new unit. (ECF No. 56, PageID.975, 977–978.) According to Defendants, that application was reviewed by a number of people—none of whom was Farris. (ECF No. 56, PageID.972–973, 980.) For her part, Farris avers, "At no time during my encounters with Mr. Berryman did I threaten him with . . . a transfer to another facility." (ECF No. 57-1, PageID.1021.)

7

On the other hand, Berryman has averred that the transfer was retaliatory. (*See* ECF No. 54, PageID.921–929.) Berryman asserts that in December 2021, after he told Farris that he did not want her to provide him treatment because she was a defendant in this suit and because she had previously provided mistreatment, Farris threatened a retaliatory transfer. (ECF No. 54, PageID.921–922.) Berryman also avers that in May 2022, he refused a nasal swab and heard someone say "get your girl friend to bring you back from this one, Mr. Lawyer. [Our] lawyer said we can transfer you." (ECF No. 54, PageID.922.) Berryman believes that Farris made this statement because he heard it as he went past her office door. (*See id.*) He further infers that the reference to "girl friend" is the undersigned or the Magistrate Judge in this case. (*See id.*) Finally, Berryman argues that other prisoners have special accommodations notices, including a ground-floor cell, but Farris did not threaten them with transfer. (ECF No. 54, PageID.927–928.)

Although the Court does not decide whose account is more credible, Defendants have at least put forth some evidence of a non-retaliatory reason for Berryman's transfer. Thus, Berryman's likelihood of success is not nearly as strong as it would be if his account were uncontroverted.

Further discounting the likelihood of success on the merits (and also further showing that the motion is not sufficiently related to the complaint) is that Berryman has not shown that he exhausted administrative remedies relating to his May 2022 transfer or the deprivation of religious services at TCF. Federal

8

courts generally dismiss claims that are not properly exhausted. *Russ v. TDOC*, No. 19-5656, 2020 WL 3317753, at *3 (6th Cir. Jan. 15, 2020).

In some cases, a plaintiff might overcome a not-so-strong showing of likelihood of success with a strong showing of irreparable harm. *See Balow v. Michigan State Univ.*, 24 F.4th 1051, 1056 (6th Cir. 2022) (providing that preliminary injunction factors are "to be balanced against one another"). But that is not this case. While initially Berryman alleged that there were no other Jewish-born prisoners at TCF to form a minyan and no Jewish food offered at TCF (ECF No. 54, PageID.918), it appears that things have since changed. Defendants submitted an affidavit from Becker (the TCF chaplain) indicating that Berryman had not requested religious services or a kosher diet since he arrived at TCF and that if those requests were made, he would attempt to satisfy them. (*See* ECF No. 61, PageID.1071.) And in a very recent filing Berryman states, "Plaintiff followed the statement that all he had to do was request services and kosher diet, which Plaintiff has done and that request was approved at the facility by Chaplain Becker. Plaintiff attends Jewish Services with One other Jewish prisoner on Sabbath night (Friday)." (ECF No. 75, PageID.1160.) From this, the Court infers that, irrespective of the existence of a minyan, Berryman is now being provided and participating in services at TCF that allow him to practice his faith. Without further information about what, specifically, Berryman is lacking in terms of religious services, this Court is not convinced that he is suffering irreparable harm at the moment.

9

To sum up, whether it be a disconnect between the complaint's allegations and those in the motion for preliminary relief, that Defendants have at least a fair chance of succeeding on the merits, or that Berryman has not demonstrated that he is currently suffering irreparable harm, neither a temporary restraining order or motion for preliminary injunction is warranted.

As noted, there are two ancillary matters surrounding Berryman's motion for preliminary relief; the Court turns to those now.

One relates to Berryman's motion to strike. In opposing Berryman's motion for preliminary relief, the MDOC Defendants filed four affidavits. These affidavits were not signed, so Berryman moved to strike them. (*See* ECF No. 62.) Due to delays in docketing or mailing, the Magistrate Judge issued her report and recommendation before Berryman's motion to strike was docketed. (*Compare* ECF No. 60, *with* ECF No. 62.) And the day after the Magistrate Judge issued her report and recommendation, the MDOC Defendants docketed an errata sheet and attached signed affidavits (except, as discussed below, for one). (ECF No. 61.) Because the signed affidavits had the same content as the unsigned ones, and because she had already issued her report and recommendation, the Magistrate Judge concluded that Berryman's motion to strike was moot. (ECF No. 64, PageID.1087.)

Berryman objects to this determination. (ECF No. 72.) Because the signed affidavits were docketed on July 13, 2022, Berryman infers that they must have been signed on that date (or a bit earlier); yet, says Berryman, the signed

10

affidavits repeat the following statement from the unsigned affidavits: "executed on the 22nd date of June 2022." (ECF No. 72, PageID.1152.)

This objection will be overruled. Simply because the signed affidavits were docketed on July 13, 2022, does not mean that they were not signed on June 22 as they indicate. Defendants' counsel may have had the signed affidavits in his possession on June 22 but accidently docketed unsigned versions. In any event, any error in the execution date does not change the bottom line: the signatures indicate that the affiants have sworn to the content of their affidavits.

But, says Berryman, one of the affidavits attached to the errata sheet is still unsigned. (ECF No. 72, PageID.1152.) Berryman is correct that Brianna LaGrow's name is merely typed—and it does not even include an "s/." (ECF No. 61, PageID.1059.) Thus, the Court will order Defendants' counsel to submit a second affidavit from LaGrow; the second affidavit must state that on June 22, 2022, LaGrow swore to the facts in her first affidavit. If LaGrow is not able to make that attestation, the Court will consider striking her first affidavit.

The second ancillary issue is the MDOC Defendants' limited objection to the Magistrate Judge's report and recommendation. (ECF No. 67.) In his affidavit, Becker (the chaplain at TCF) stated, "If Phillip Berryman requested to receive a Jewish diet at TCF, I would complete an interview and make a recommendation for him to be provided a Kosher diet if he qualified, pursuant to MDOC policy." (ECF No. 61, PageID.1071.) In her report, the Magistrate Judge relied on Becker's affidavit and remarked, "Kosher food would be made available, on Mr. Becker's

11

recommendation, but Plaintiff has not asked to be admitted to the Kosher meal program." (ECF No. 60, PageID.1047.) In their objections, Defendants seek to clarify that "if Plaintiff were to request and be approved for a kosher diet while at TCF, this does not necessarily mean he would receive a daily kosher diet at T[CF]. . . . Instead, the MDOC would ensure that he receive a kosher diet at a facility that provides one." (ECF No. 67, PageID.1109.) "[I]n an abundance of caution, Defendants request that any inference or suggestion that Defendant can currently provide a daily kosher meal at TCF in the R&R not be adopted by the Court." (*Id.*)

This objection is either too early or too late, i.e., it is not yet ripe or is moot. In his response to Defendants' objection, Berryman states, "Plaintiff followed the statement that all he had to do was request services and kosher diet, which Plaintiff has done and *that request was approved at the facility by Chaplain Becker*." (ECF No. 75, PageID.1160 (emphasis added).) The Court infers from this statement that, at least for the time being, Berryman is being provided a daily kosher diet at TCF. So, presently, there is no concern that the Magistrate Judge inappropriately suggested that the MDOC would provide a daily kosher meal at TCF. The Court, however, acknowledges Defendants' point that MDOC policy might not require a daily kosher meal at TCF and that Becker merely attested that he would make a "recommendation for [Berryman] to be provided a Kosher diet if he qualified, *pursuant to MDOC policy*," (ECF No. 61, PageID.1071 (emphasis added)).

\* \* \*

12

For the reasons given, the Court

- OVERRULES the parties' objections (ECF Nos. 67, 68) to the Magistrate Judge's recommendation to deny Berryman's motion for preliminary injunction (ECF No. 60),

- ACCEPTS the Magistrate Judge's recommendation to deny Berryman's motion for preliminary injunction (ECF No. 60),

- DENIES Berryman's motion for preliminary injunction (ECF No. 54),

- DENIES Berryman's motion for an evidentiary hearing relating to his motion to strike Defendants' affidavits (ECF No. 71), and

- OVERRULES Berryman's objections (ECF No. 72) to the Magistrate Judge's order finding his motion to strike Defendants' affidavits to be moot (ECF No. 64).

SO ORDERED.

Dated: August 25, 2022

                                          s/Laurie J. Michelson
                                          LAURIE J. MICHELSON
                                          UNITED STATES DISTRICT JUDGE